The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Thomas Lee MILTON and Anita Marie Perkins, Defendants–Appellees.

No. 91SA361.

Supreme Court of Colorado, En Banc.

April 6, 1992.

James F. Smith, Dist. Atty., Seventeenth Judicial Dist., Michael J. Milne, Sr. Deputy Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Carol M. Haller, Deputy State Public Defender, Brighton, for defendant-appellee Thomas Lee Milton.

Vitek & Doniger, P.C., Anne M. Vitek, Jeffrey D. Doniger, Denver, for defendant-appellee Anita Marie Perkins.

Justice VOLLACK delivered the Opinion of the Court.

The People appeal from a district court ruling suppressing evidence that was unconstitutionally seized. We reverse.[1]

### I.

At approximately 6:00 a.m. on Saturday, April 6, 1991, four uniformed police officers were dispatched in response to a victim's call. The victim alleged that he had been assaulted by a couple, Thomas Milton (Milton) and Anita Marie Perkins (Perkins), in their home hours earlier. The victim had lacerations on his face, and his clothing was torn. The victim told the officers that Milton and Perkins took his wallet, confined him to a stool with rope for a period of six hours, threatened him with a cleaver and repeatedly struck him, but eventually released him. The officers thought that the victim's story was far-fetched and bizarre, but accompanied the victim to the couple's residence to investigate his story.

The officers arrived at the residence at approximately 6:40 a.m., and three officers approached the house. One of the officers knocked on the door and Milton answered. Milton appeared wearing jeans bearing blood stains. Officer Horton introduced herself and asked if they could step in to discuss an incident that occurred earlier that evening. Milton replied, "Sure," allowed the officers to enter, and stated that he knew what their inquiry regarded.

Milton further stated that he had arrived home to find the victim with his wife, and that the victim, who had martial arts training, threatened Milton with a knife. Milton told the officers that he merely defended himself.

After entering the house, Officer Horton saw additional blood stains, and rope hanging on a chair. Officer Horton later directed Milton out to the front yard, at which point the victim identified Milton to another officer. Milton repeated his previous statements. Officer Horton and Milton reentered the house, and Milton identified the knife with which the victim allegedly threatened him.

One of the officers asked Perkins if she owned a cleaver. Perkins told the officers that she had lost a cleaver from her knife set. Officer Patricia Hobbs asked if she could get the knife set. Perkins agreed and pointed to the cabinet where the set was located. Perkins also told the officers that the victim had approached them earlier in the evening, attempting to sell a stereo, and that a scuffle ensued. The officers collected the chair, the rope and various knives, including a cleaver.

Both Milton and Perkins were placed under arrest. Officer Smith escorted Milton out to a patrol car and advised him of his *Miranda* rights. Milton indicated that he understood his rights and told Officer Smith that the victim and his wife were on the couch when he arrived home, that he became upset and beat the victim. He also stated that he had tried to kill the victim. After being advised of her rights, Perkins stated that the victim came to their residence earlier that evening, attempting to sell a stereo. Perkins also stated that she went to bed and was not aware of any altercation between Milton and the victim.

Milton and Perkins were later charged with second degree kidnapping and aggravated robbery, and Perkins was additional-

---

1. Rule 4.1 of the Colorado Appellate Rules gives this court jurisdiction over interlocutory appeals filed by the State when suppression of evidence is at issue.

ly charged with menacing.[2] Milton and Perkins filed a motion to suppress the evidence seized. The district court ruled that consent to search the residence was not freely and voluntarily given and, therefore, the subsequent search was constitutionally infirm. The People have appealed and contend that consent was properly given and the search was valid under both the Colorado and United States Constitutions. We reverse the district court's order suppressing the physical evidence seized, but do so under the plain view doctrine.[3]

## II.

This case requires us to determine whether consent to entry of a residence for the purpose of inquiry constitutes a valid intrusion for the purposes of the plain view doctrine. We hold that it does.

The district court expressly ruled:

> In looking at the context of what occurred, the Court has to apply the constitutional principle that everyone should be free in their home from unreasonable searches and seizures....
>
> ....
>
> The problem is that at 6:40 in the morning four police officers in uniform come to the door and knock on it and the door is opened. And looking out Mr. Milton went—when Officer Hobbs said, "May I come in," and we come in or whoever it was said, "Sure," I can understand why Mr. Milton would say that. There's not much else that he's got to say. And once the officers are in, I think they conducted a search that's not constitutionally permissible.
>
> ... The search and the seizure cannot be allowed to stand.

The district court premised its ruling on the law of search and seizure, finding that Milton's consent was invalid. The district court did not, however, precisely delineate *to what* Milton was consenting.

■ We find that consent *to search* was not at issue in this case because the investigating officers did not seek permission to search before collecting the chair, rope, blood scrapings, and knives. The officers only sought permission *to enter* the residence to discuss the incident reported by the victim. It is well settled that once law enforcement officers are validly inside a residence, they may seize evidence within their plain view. We thus analyze whether the officers validly entered Milton's and Perkins' residence and whether the evidence seized was within their plain view. We begin our analysis with a brief discussion of the plain view doctrine.

## III.

### The Plain View Doctrine

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); *see also Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) (holding that the plain view doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable). The plain view doctrine has been applied where police officers are not searching for evidence but "inadvertently come across an incriminating object." *Horton*, 496 U.S. at —, 110 S.Ct. at 2307.

■ The plain view doctrine justifies the warrantless seizure of evidence when the object in plain view possesses a readily apparent incriminating character and when

---

**2.** *See* §§ 18–3–302, 18–4–302, and 18–3–206, 8B C.R.S. (1986).

**3.** The district court suppressed *any* evidence of what the officers observed after they knocked on the door on the grounds that the search was unlawful. The district court's ruling thus categorically excluded all evidence under the law of search and seizure.

The district court did not expressly address whether Milton's and Perkins' statements were made in violation of the privilege against self-incrimination as secured by the Colorado and United States Constitutions. The parties similarly did not address the admissibility of the statements in that context. Accordingly, our holding only addresses the admissibility of the physical evidence seized from Milton's and Perkins' residence.

the object is discovered inadvertently. *Id.* at ——, 110 S.Ct. at 2308. "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.; see also Coolidge,* 403 U.S. at 465, 91 S.Ct. at 2037 ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.")

In the present case, the record clearly demonstrates that the items seized were inadvertently discovered and that they possessed incriminating character. We must therefore consider whether the initial intrusion into Milton's residence was valid.

### IV.

#### Entry Into the Residence

We are called on to determine whether four uniformed police officers' knocking on a door at 6:40 a.m. and asking for permission to enter to discuss an incident can constitute valid entry if the occupant consents. We conclude that such an approach constitutes valid entry if the occupant's consent to enter is freely and voluntarily given.

We have previously held that "[k]nocking on the door of a residence for the purpose of investigating a crime is reasonable police conduct and does not infringe upon the occupant's right of privacy." *People v. Baker,* 813 P.2d 331, 333 (Colo.1991) (citing *Blincoe v. People,* 178 Colo. 34, 36–37, 494 P.2d 1285, 1286 (1972)). "The occupant of the residence retains the right to open the door, or to refuse to open the door...." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971)).

■ We have recognized that law enforcement officers can constitutionally knock on the door of a residence and seek permission to enter to conduct a search of that residence. *People v. Thiret,* 685 P.2d 193 (Colo.1984); *see also Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 223, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) (holding that searches conducted pursuant to valid consent are constitutionally permissible); *Florida v. Jimeno,* —— U.S. ——, ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991) (recognizing that the Supreme Court has long approved consensual searches because it is reasonable for police to search once they have permission to do so). The rationale justifying consent is grounded in reasonableness. *See Jimeno,* —— U.S. at ——, 111 S.Ct. at 1801 (holding that the Fourth Amendment only proscribes searches which are unreasonable) (citing *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)); *see also Hoffman v. People,* 780 P.2d 471, 474 (Colo.1989).

■ Entry into a residence for the purpose of inquiry contemplates a much *lesser* degree of intrusion into an occupant's privacy than does entry for the purpose of conducting a search. The reasoning supporting consent searches thus applies, with stronger force, to entry into a residence for the purpose of inquiry. It is reasonable police conduct to knock on the door of a residence. *See, e.g., Baker,* 813 P.2d at 333. Additionally, no right of privacy is violated when police officers knock on the door of a residence. *Id.* We therefore conclude that police officers may constitutionally knock at the entrance to a residence and seek permission to enter for the purpose of inquiry, and, if the occupant validly consents, the officers may enter.

■ Occupants have the right to refuse to open the door. Occupants also have the right to refuse to allow the officers to enter, and the right to refuse discussion with the officers. We note that consent, when given to enter for the purposes of inquiry, does not justify otherwise impermissible searches or seizures. It may, however, support seizure of evidence falling within the plain view doctrine.

### V.

#### Milton's Consent to Entry

We must now determine whether Milton's consent to the officers' entry was

valid. We note that "[a] court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record." *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987).[4] "An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case." *Id.* at 732–33.

■ Whether an individual's consent is valid is a question of fact to be determined by careful scrutiny of the totality of the circumstances. *People v. Thiret,* 685 P.2d 193, 201 (Colo.1986). Consent is valid only where it is given freely and voluntarily. *See, e.g., id.* at 201. Consent is voluntarily given if it is "not the result of duress or coercion, express or implied, or any other form of undue influence exercised against the defendant." *Id.* (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973); *People v. Elkhatib,* 632 P.2d 275 (Colo.1981); *People v. Torand,* 622 P.2d 562 (Colo.1981)).

In the present case, the district court concluded that Milton had no choice but to respond "[s]ure" when one of four police officers at the front door of his house asked for permission to enter. The district court noted that the officers were in uniform and knocked on the door at 6:40 a.m. Based on the totality of the circumstances, the district court concluded that Milton's

and Perkins' constitutional rights were not observed. In response, the district court suppressed all evidence after the officers crossed the house's threshold.

■ Officer Horton testified that three officers went to the door, and one officer knocked.[5] The officers remained on the front porch when Milton answered the door. Officer Horton introduced herself and asked if they could step in and discuss an incident, and Milton replied, "Sure," acknowledging that he knew what their inquiry regarded. Milton allowed the officers to enter, and the ensuing conversation lasted approximately fifteen to twenty minutes. While inside, the officers observed in plain view the items which they seized: a chair with rope, and scrapings of blood samples.[6]

There is no evidence in the record establishing that any of the police officers threatened Milton, used force against Milton, or concealed their real purpose for the encounter from Milton at the entrance.[7] There is no evidence clearly indicating that Milton was uneducated, had an impaired state of mind,[8] or was in an unduly oppressive environment when opening the door and greeting the officers.

In the present case, we find that, based on the totality of these circumstances, Milton voluntarily consented to the officers' entry to discuss the referenced incident. Milton could have refused to open his front door and further could have refused to

**4.** *See also People v. Cleburn,* 782 P.2d 784, 788 (Colo.1990) (holding that a trial court's finding must not be overturned if supported by competent evidence in the record).

**5.** Another officer, Officer Russell, was on the scene.

**6.** The officers also seized a cleaver. They first asked to view the knife set, and Perkins directed them to the knife set to which the cleaver belonged. The officers had consent to look for the knife set, and, in course, located the cleaver.

The record does not clearly reveal whether an identification card, wallet, and shirt were seized. Sergeant Russell testified that he clearly saw the shirt and card. After discovering the

identification card, Sergeant Russell asked for permission to search, which Milton and Perkins gave without hesitation. Sergeant Russell then located the victim's wallet.

**7.** One of the police officers testified that, with respect to Perkins, no promises were made in exchange for her testimony, no threats were made, and no gun was ever drawn.

**8.** The victim did testify that Milton and Perkins at some point smoked crack, although the record does not reveal the extent to which this occurred. The victim also testified that, upon awakening, he was released and went immediately to the police. Thus, a period of time elapsed between Milton's ingestion of crack and the officers' arrival.

invite the officers to enter. He also could have refused to discuss the incident with the officers. His consent to the officers' entry was thus freely given. Once validly inside the residence, the officers seized that which was in their plain view. We conclude that the district court erred in suppressing the physical evidence.

ERICKSON, J., does not participate.