The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Steven Eugene CLOUSE, Defendant–Appellant.

No. 91CA0563.

Colorado Court of Appeals, Div. II.

Nov. 19, 1992.

Rehearing Denied Jan. 14, 1993.

Certiorari Denied Oct. 4, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, CO, for plaintiff-appellee.

Jeffrey O. Saufley, Colorado Springs, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Steven Eugene Clouse, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of first degree criminal trespass, second degree forgery, two counts of second degree burglary, three counts of theft, and four counts of habitual criminal. We affirm.

A police officer noticed an expensive automobile with a window partially rolled down in the parking lot of a motel. The motel was located in a high-crime area and the officer questioned why that type of vehicle was in the area unsecured. As a result, the officer conducted a computer check on the vehicle, which indicated that it was stolen. The officer subsequently called for back-up.

The officer then contacted the motel manager and asked who was driving the vehicle. The manager provided the name of "Michael Reardon" and the room in which he was staying. A telephone inquiry to the police station on the Reardon name revealed that there was an outstanding municipal arrest warrant for that individual.

The police knocked on the door of the room designated by the manager and defendant opened the door. An officer stepped into the doorway to conduct a "pat-down" or "frisk" of defendant for weapons. Then, the officer asked defendant if he and the other officers could talk to him. Defendant said "sure" and invited them into the room by stepping back from the doorway.

At that point, the officers noticed a black shoulder holster on the floor and a revolver on the nightstand. The police immediately handcuffed defendant for safety reasons and provided *Miranda* warnings. After defendant was handcuffed, an officer observed a switchblade knife on the top of a dresser. Defendant was then advised that he was going to be transported to the police station. Defendant asked the officer to open one of the dresser drawers to re-

trieve his money. The officer did so and found other items.

The officers conducted a search of the room for other people or more weapons. During the search, an officer looked under the bed and found a plastic bag, a camera, and a hunting knife. While looking through the bag for weapons, the officer noticed some credit cards issued to persons other than "Michael Reardon."

As they were leaving, the officers collected some of the personal property in the room for safekeeping, including two leather jackets. The officers also seized the items found under the bed and in the drawer.

Defendant later identified himself by his correct name. And, a subsequent inventory of the property taken from the room revealed that many of the items were stolen including the leather jackets. The vehicle was confirmed as being stolen from one of the residences as well.

Thereafter, defendant asked the police to return to the motel to secure his remaining personal property. By that time, the manager had placed defendant's property in a locker. The police retrieved the items from the locker.

## I.

Initially, defendant argues that the trial court erred in failing to inform him that, if he testified, any admissions of prior felony convictions made by him during the substantive phase of the trial could not be used as proof of the habitual offender charges. We perceive no reversible error.

Procedural safeguards are imposed to ensure that a waiver of defendant's right to testify is done knowingly, voluntarily, and intentionally. *People v. Curtis*, 681 P.2d 504 (Colo.1984). Specifically, a trial court must advise a defendant that:

[H]e has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose

it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*People v. Curtis, supra,* 681 P.2d at 514.

■ Further, defendants facing habitual criminal charges are entitled to advance notice that a jury can consider admissions of prior convictions only on the issue of credibility and that the prosecution cannot use such admissions to prove the habitual offender charges. *People v. Tafoya*, 654 P.2d 1342 (Colo.App.1982).

■ Neither *Curtis* nor *Tafoya*, however, address the minimum requirements necessary to effect a valid waiver of a defendant's right to testify. *See Roelker v. People*, 804 P.2d 1336 (Colo.1991); *People v. Ball*, 813 P.2d 759 (Colo.App.1990). Rather, in determining whether a defendant has made a valid waiver of that right, the totality of the circumstances must be considered. And, the trial court's determination that there has been a valid waiver will be upheld as long as there has been substantial compliance with the *Curtis* requirements. *Roelker v. People, supra; People v. Allaire*, 843 P.2d 38 (Colo.App.1992).

■ As pertinent here, the following colloquy took place between the court and defendant:

THE COURT: And you understand, sir, that if you choose to testify, the district attorney will be able to cross-examine you as to any felony convictions which you might have. You understand that also?

THE DEFENDANT: Yes, sir, I do.

. . . .

THE COURT: And you understand that if you choose to testify and if the district attorney is allowed to cross-examine you with regard to prior felony convictions,

the jury can be instructed that you're to be tried on this case and only this case and that any testimony regarding prior felony convictions is to be used by the jury *only as to the determination of your credibility or believability as a witness* and not as to whether you committed this crime or not. You understand that?

THE DEFENDANT: Yes.

(emphasis added)

We conclude that this advisement was adequate without a specific reference to the habitual offender charge. There is no indication in the record that defendant did not understand that use of the felony convictions would be confined to credibility. Indeed, after deciding not to testify, defendant stated:

[T]oday I'm going to have to say·no, I can't testify because of my past priors, because I entered past guilty pleas when I never was told that this could haunt me some day—that it could [be] used to discredit my word, that I'm being called a liar every time I turn around.

And, unlike in *People v. Chavez*, 832 P.2d 1026 (Colo.App.1991) (*cert. granted* July 7, 1992), here, the trial court advised defendant that it was his personal decision to choose not to testify, regardless of counsel's advice.

## II.

Defendant moved for continuance of the habitual phase of the proceeding, and indicated that he would waive his right to have the evidence heard by the jury. The prosecution objected contending that the applicable statute mandated that the jury hear the evidence and the trial court agreed. Defendant contends that the trial court erred in ruling that he could not waive his right to a jury trial for the habitual offender phase of the trial. We disagree.

The right to waive a trial by jury is not a right guaranteed by the state constitution. *People v. District Court*, 843 P.2d 6 (Colo.1992). Rather, that right is characterized as a common law right subject to regulation or abrogation by the Gen-

eral Assembly. *People v. Davis*, 794 P.2d 159 (Colo.1990); *see also People v. Brisbin*, 175 Colo. 428, 488 P.2d 63 (1971) (in first degree murder prosecution, statute requiring prosecutorial consent as a condition of waiver of jury trial on question of sanity was constitutional).

In determining whether the General Assembly intended to regulate or abrogate the right to waive a jury trial, we must look to the plain and ordinary meaning of statutory language. *See Garcia v. People*, 200 Colo. 413, 615 P.2d 698 (1980) (legislative intent to exclude prosecutorial consent requirement from statute governing right to jury trial).

Section 16–13–103(1), C.R.S. (1986 Repl. Vol. 8A), the applicable statute governing habitual criminal proceedings, states as follows:

If the allegation of previous convictions of other felony offenses is included in an indictment or information and if a verdict of guilty of the substantive offense with which the defendant is charged is returned, the court shall conduct a separate sentencing hearing to determine whether or not the defendant has suffered such previous felony convictions. As soon as practicable, the hearing shall be conducted by the trial court before the jury impaneled to try the substantive offense charged; except that, if trial by jury was waived or if the defendant pleaded guilty, the hearing shall be conducted before the trial court.

This language is ambiguous as to whether a defendant can waive his right to a jury trial in an habitual offender proceeding once that jury has convicted him of the underlying offense. However, this ambiguity is resolved by § 16–13–103(4), C.R.S. (1992 Cum.Supp.) and § 16–13–103(4)(a) and (b), C.R.S. (1986 Repl.Vol. 8A), which provide:

If the defendant denies that he has been previously convicted as alleged in any count of an information or indictment, the jury impaneled to try the substantive offense charged shall determine by separate hearing and verdict whether the de-

fendant has been convicted as alleged.... The procedure in any case in which the defendant does not become a witness in his own behalf upon the trial of the substantive offense shall be as follows:

The jury shall render a verdict upon the issue of the defendant's guilt or innocence of the substantive offense charged;

If the verdict is that the defendant is guilty of the substantive offense charged, the same jury *shall* proceed to try the issues of whether the defendant has been previously convicted as alleged. (emphasis added)

 Thus, based upon the plain language of § 16–13–103(4)(a) and (b), a defendant may not try to the court the issue of his habitual criminal status once a jury has convicted him of the underlying offense. Rather, absent a showing that defendant's right to due process will be violated in some manner, the jury must decide that issue. *See People v. District Court, supra.* Likewise, if the defendant waives his right to a jury in the trial of the underlying offense, then the court determines whether the defendant is an habitual criminal. *See* § 16–13–103(1), C.R.S. (1986 Repl.Vol. 8A).

 Accordingly, because the jury convicted defendant of the underlying offenses here, the trial court did not err in its determination that the jury could not be waived for purposes of the habitual criminal charge.

## III.

 Further, defendant contends that the trial court erred in failing to administer the oath to the jurors until after "substantial evidence" had been presented by the prosecution. As a result, defendant argues that a new trial is required. We are not persuaded.

Following selection of the jury, opening statements were presented and then two witnesses for the prosecution testified. At that point, the court realized that it had failed to swear in the jury. Noting that it did not find "any possible prejudice" in that error, the trial court administered the oath.

The court informed the jury that the "oath [applied] retroactive[ly] to the commencement of the trial." Defense counsel objected to the late swearing in, but also stated that he was uncertain whether there was "actual prejudice."

Here, we conclude that the failure to swear in the jury at this stage of the trial constituted harmless error. Crim.P. 52(a). The record confirms that the jury was sworn in long before deliberations, and the trial court informed the jury that the oath applied retroactively. *See Hollis v. People*, 630 P.2d 68 (Colo.1981); *People v. Berry*, 703 P.2d 613 (Colo.App.1985). Further, defendant does not indicate, and we are unable to conclude upon review of the record, that prejudice was suffered as a result of the mistake. Accordingly, a new trial is not warranted.

## IV.

Last, defendant asserts that the trial court erred in denying his motion to suppress evidence seized in the search of his motel room. Defendant argues that the search was improper because the police did not have a warrant. Defendant also contends that the additional seizure of evidence from the locker was tainted by the initial illegal search, and as a result, that evidence should be suppressed. We disagree with all of his contentions.

## A.

We find no merit in defendant's argument that the police improperly entered the room without a warrant and invitation.

 Law enforcement officers can constitutionally knock on the door of a residence for the purpose of investigating a crime. *People v. Milton*, 826 P.2d 1282 (Colo.1992). The occupant of the residence retains the right to open the door or to refuse to open the door. *People v. Baker*, 813 P.2d 331 (Colo.1991).

 Whether an individual validly consents is a question of fact to be determined based upon the totality of the circumstances, *People v. Thiret*, 685 P.2d 193

(Colo.1984), and a trial court's findings of fact are entitled to deference by a reviewing court if supported by the record. *People v. Quezada*, 731 P.2d 730 (Colo.1987).

Here, there is record support for the trial court's finding that, after knocking on defendant's door to investigate the stolen vehicle, the police had consent to enter the room. The officers asked if they could speak to defendant, whereupon he replied "sure." Defendant then gestured to the officers that they could enter the room. Conversely, the record fails to demonstrate that defendant was uneducated, and he testified that, while he had ingested alcohol and cocaine on the day in question, his memory of the events was good, thus indicating that he was not in an impaired mental state. *See People v. Milton, supra.*

### B.

We next address defendant's argument that the officers improperly conducted a search of the motel room. We perceive no reversible error.

Police officers making a valid arrest may conduct a reasonable search of the arrestee's person and the area within that person's immediate control. *People v. Hufnagel*, 745 P.2d 242 (Colo.1987).

One of the purposes of a search incident to an arrest is to protect the arresting officers. *People v. Vigil*, 175 Colo. 421, 489 P.2d 593 (1971) (contemporaneous search justified by need to seize weapons and other things which might be used to assault officer). And, as long as the search is made immediately following the arrest and is confined to the immediate area surrounding the arrested person, the search is constitutional, even if that person is handcuffed or physically unable to reach the area searched. *People v. Jones*, 767 P.2d 236 (Colo.1989).

Here, we conclude that the officers' search of the room was constitutionally permissible. The officers had probable cause to arrest defendant. Further, while in the room, the officers were concerned for their safety and, thus, had a valid purpose for searching defendant's room. They were working in a high-crime area and confronting a suspected criminal. Thus, they acted properly in searching for weapons and other persons in the area surrounding defendant. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (gun on table or in drawer in front of arrestee can be as dangerous to officer as one concealed); *People v. Dandrea*, 736 P.2d 1211 (Colo.1987); *People v. Hufnagel, supra.*

### C.

Next, we find no merit in defendant's contention that the search of the plastic bag found underneath defendant's bed was invalid.

A search incident to a lawful arrest need not be limited to a mere pat-down of the arrestee's outer clothing but may extend to pockets and to other containers, opened or closed, found on the person of the arrestee or within his immediate reach. *People v. Boff*, 766 P.2d 646 (Colo.1988).

In announcing its holding in *Boff*, our supreme court cited with approval *United States v. Litman*, 739 F.2d 137 (4th Cir. 1984) and *Lee v. State*, 311 Md. 642, 537 A.2d 235 (1988). In *Litman*, the court upheld the search of a shoulder bag in close proximity to the defendant, as a search incident to an arrest. And, in *Lee*, the court upheld the search of a gym bag hanging on a fence at a distance of two to eight feet from the defendant, as a search incident to an arrest.

Here, there was testimony that the room was no larger than 12–by–15 feet. Further, an officer testified that at the time of his arrest, defendant was within "lunging distance" of the items underneath the bed. And, since the officer determined that some of the items underneath the bed belonged to other people, he properly seized them. *People v. Boff, supra* (searching officer may seize weapons or other items reasonably believed to be related to criminal activity). Under these circumstances, therefore, we conclude that the search of the plastic bag and seizure of

its contents was valid as a search incident to an arrest.

### D.

Contrary to defendant's contention, we conclude that defendant's rights were not violated when the officers removed the leather jackets from his room as well as the items recovered from the locker on the following day.

 It was undisputed that the motel was located in a high-crime area, and there is no evidence that any rental had been paid by defendant to occupy the motel room on the following day. The officers testified and the trial court found that the leather jackets were removed to protect these items from theft.

Even if we assume that protecting the defendant's property from theft does not justify the seizure of the leather jackets, we conclude there is no basis for reversal of the court's order denying his motion. This is because the officers testified, and defendant did not dispute the fact, that the following day defendant requested that they remove his property from the motel premises. Hence, the jackets would have been obtained at that point in any event. *See People v. Schoondermark,* 759 P.2d 715 (Colo.1988) (evidence initially discovered in an unlawful manner is admissible if the same evidence inevitably would have been obtained lawfully).

Consistent with the written inventory procedures followed by the officers in connection with the arrest and incarceration of prisoners, these items would have been properly inventoried at the jail as were the other items recovered from the motel. *See People v. Harfmann,* 633 P.2d 500 (Colo. App.1981) (It is constitutionally permissible to inventory and retain defendant's personal property at the jail in connection with or after an arrest.).

We have considered defendant's other contentions of error, including his claim that his right to a speedy trial was violated, and conclude either that it is unnecessary to address them or that they lack merit.

The judgment is affirmed.

PIERCE and VAN CISE,* JJ., concur.