The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Guadalupe HERRERA, Defendant–Appellee.

No. 96SA460.

Supreme Court of Colorado, En Banc.

April 7, 1997.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Plaintiff–Appellant.

Sylvian R. Roybal, Denver, for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

The people bring this interlocutory appeal under C.A.R. 4.1 [1] and section 16–12–102(2), 8A C.R.S. (1986 & 1996 Supp.),[2] challenging a suppression order entered by the Adams County District Court. The order suppressed cocaine and currency found in the home of the defendant, Guadalupe Herrera (Herrera), as well as statements made by Herrera to law enforcement officers subsequent to the search of Herrera's home. The trial court found that Herrera did not con-

---

1. C.A.R. 4.1(a) provides in pertinent part:

    The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim. P. 41(e) .... and Crim. P. 41.1(i) made in advance of trial by the defendant ... to suppress evidence....

2. Section 16–12–102(2), 8A C.R.S. (1986 & 1996 Supp.), provides in pertinent part:

    The prosecution may file an interlocutory appeal in the supreme court from a ruling of the trial court granting a motion made in advance of trial by the defendant for the return of property and to suppress evidence....

sent to the warrantless search of his home and ruled that the cocaine and currency were improperly seized. The trial court also found that Herrera's advisement under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), given immediately after the illegal search, was not only tainted by the illegal search but was also inadequate due to significant omissions. On those bases the court suppressed the statements Herrera made to the law enforcement officers. We affirm the trial court's finding that Herrera did not consent to the search of his home, and we affirm the order suppressing the cocaine and currency seized. We do not reach a decision concerning the order suppressing Herrera's statements because this issue was not raised by the prosecution in its request for interlocutory review. *See People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990) (holding that issues not raised in petitioner's initial brief are not properly before appellate court and will not be addressed).

## I.

On September 28, 1995, Senior Special Agent Jimmy L. Spence (Spence) of the United States Immigration and Naturalization Service went to the Herrera residence at 7131 North Hooker Street, Apartment 210, in Adams County during daytime hours. Spence had been assigned to the organized drug task force for the past eight years and has spoken fluent Spanish for 30 years. Another officer on Spence's team developed information that a large amount of cocaine was at Herrera's residence. Spence, with four or five other police officers as support, knocked on the door. When Herrera opened the door, Spence identified himself as an immigration officer and requested information about Herrera's citizenship. Herrera initially gave an incorrect first name, but then provided the correct information and admitted that he was in this country illegally. Spence said he had been informed that the apartment might contain drugs, and he asked Herrera for permission for the police officers to search the residence. According to Spence's testimony at the motions hearing, Herrera consented to a search of the apartment. Spence then asked Herrera to read and sign a consent form written in Spanish.

Herrera did so. Spence also signed the form. Before beginning the search, Spence asked Herrera twice whether there were any drugs, money or guns in his apartment. Both times, Herrera said no.

The officers proceeded to search the apartment. In a dresser in the back bedroom the officers found four plastic bags containing a white crystalline substance they believed to be cocaine. At that time, Spence gave Herrera an oral Miranda advisement in Spanish. Further search of the bedroom uncovered five more grams of a substance the officers believed to be cocaine, which was hidden in the closet. In the kitchen area the agents found $6,000 in United States currency.

Spence testified at the motions hearing that he did not have enough information for a search warrant and that there were no exigent or emergency circumstances known to him to justify his search of Herrera's home. He also testified that he had no information before he entered the apartment that would lead him to believe that drugs might be destroyed by the occupants of the apartment. Spence was shown the consent form on direct examination, and he testified that the form "indicates that [Herrera] agreed to have his apartment Number 210 searched, and also [his] 1981 brown Eldorado Cadillac."

Herrera testified that he was living at 7131 Hooker Street, Apartment 210, Adams County, on September 28, 1995, and admitted signing a consent form written in Spanish at the request of a police officer. He testified that the form permitted the police officer to search his car, a 1981 Cadillac, which was parked outside his residence. He denied that the police officer asked if he could conduct a search of Herrera's residence. At this time the court clarified with all the parties, including the court interpreter, that the consent form, when translated into English, gave permission by Herrera to the police to search his car which was located at the residence, and said nothing concerning the search of Herrera's home.

The prosecutor then recalled Spence who stated that Herrera verbally consented to a search of the apartment. Spence testified that after he obtained this verbal consent, he

learned that a car was present outside the residence, and, seeking to search the car as well, filled in by hand the information on the consent form regarding the car.

The trial court, after hearing the conflicting evidence, discussed the factors concerning the voluntariness of a consent to search. The court found that Herrera signed a consent form describing the property to be searched as the 1981 brown Cadillac Eldorado and not his apartment. The court then made the following findings:

> I think looking at the totality of the circumstances, the only thing that I have on the other side is—is Mr. Spence's testimony, and I'm not calling him a liar, and certainly wouldn't do that, but what he says simply doesn't outweigh all of the other evidence I have.

> I think the People have a strong burden to show that a warrantless arrest is valid in some other fashion, and they simply have not met that burden. The Court finds the search, in fact, was illegal.

In addition, the court found that the search of Herrera's apartment did not involve exigent circumstances. The trial court therefore suppressed the evidence found in the apartment.

## II.

■ The United States Supreme Court has held that warrantless searches are unreasonable unless they satisfy an exception to the warrant requirement. *See, e.g., Colorado v. Bannister,* 449 U.S. 1, 2–3, 101 S.Ct. 42, 42–43, 66 L.Ed.2d 1 (1980) (per curiam). One exception to the warrant requirement that is relevant here is a search conducted pursuant to a valid consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). No search warrant is required where consent, in light of the totality of circumstances, has been freely and voluntarily given. *See id.* A warrantless search conducted on the basis of consent is limited in time, duration, physical scope, and purpose by the terms of the consent given by the consenting party. *See 3 Wayne R. LaFave, Search and Seizure § 8.1 (3d ed.1996); see also People v. Thiret,* 685 P.2d 193, 201 (Colo.1984) (consent "to look

around" does not equate with consent to detailed search of home). The admissibility of evidence seized pursuant to an allegedly consensual search must stand or fall on the basis of the consent given before the search. *See* LaFave, *supra,* § 8.1.

■ When the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *People v. Santistevan,* 715 P.2d 792, 795 (Colo.1986) (stating that the People have the burden of proving voluntariness by clear and convincing evidence). Before reaching the question of voluntariness, therefore, the prosecution bears the burden of proving the threshold factual issue of whether the defendant by his conduct, words, or both, gave permission to search. In this case, the critical question is whether the defendant made a statement permitting the police to search his house. The investigating officer testified that the defendant consented to the search of both his apartment and his car. The defendant denied ever giving permission to search his apartment, but admitted giving consent to search his car.

We must review the manner in which the trial court resolved the factual conflict between the testimonies given by the investigating officer and the defendant. When the evidence is conflicting, it is not within our province to resolve disputed issues of fact. It is the function of the trial court and not the reviewing court to weigh the evidence and determine the credibility of the witnesses. *See People v. Thomas,* 853 P.2d 1147, 1149 (Colo.1993) (affirming suppression of evidence based on trial court's finding that defendant's single response that "he didn't mind" to the officer's compound question of whether he could search defendant's person and search defendant's car, constituted consent to search defendant's person but not his vehicle); *People v. Pearson,* 190 Colo. 313, 319, 546 P.2d 1259, 1263 (1976) (affirming trial court's finding of fact that consent was voluntary when supported by adequate evidence in the record). *See also United States v. Brisbane,* 931 F.Supp. 245, 247–48

(S.D.N.Y.1996) (suppressing evidence after finding incredible officers' testimony that defendant consented to search, and finding defendant credible); *United States v. Ruffino*, 592 F.Supp. 409, 415 (N.D.Ill.1984) (suppressing evidence after finding incredible officers' testimony that defendant consented to search, and finding defendant credible); *Lopez v. State*, 663 S.W.2d 587, 590–91 (Tex.Ct. App.1983) (upholding trial court's resolution of two conflicting versions of the search in favor of officers' testimony that defendant had given consent).

Applying these principles, our task is to examine the record to determine whether the record contains adequate support for the trial court's finding of historical fact that Herrera said nothing regarding whether the officers could search his house. In this process of review, we defer to the trial court, who hears the testimony and observes the demeanor of the witnesses, and we will not substitute our judgment for that of the trial court:

> Deference is given to the trial court's findings of fact and, as long as there is support for them, we will not overturn such findings. This is true even though a contrary position may find support in the record and even though we might have reached a different result had we been acting as the finder of fact.

*Thomas,* 853 P.2d at 1149.

### III.

We conclude that the record supports the trial court's factual finding that consent was not given by Herrera for Spence to search the house. Although the trial court's analysis in part focused on the factors for determining the voluntariness of consent to search, the trial court's findings include the threshold determination that the prosecution failed to meet its burden to prove that Herrera gave Spence permission to search his apartment. As a matter of credibility, the trial court found Herrera's account, that he did not give verbal consent to search his apartment, more credible than Spence's account, because Herrera's version was more consistent with the totality of the evidence. As a result, the trial court ruled that the prosecution failed to meet its threshold burden that consent was given by the defendant for the search of his apartment, and it suppressed the items seized.

We give deference to the trial court's findings of fact and rule that there is evidence to support the trial court's conclusion that the prosecution failed to meet its burden to prove that the defendant consented to the search of his residence. Because the prosecution failed to meet its threshold burden of proving that consent was given, we do not reach the question of whether the consent given was voluntary. We therefore affirm the trial court's order of suppression of December 9, 1996.