The PEOPLE of the State of
COLORADO, Plaintiff–
Appellee,

v.

Julie A. BOSTIC, Defendant–Appellant.

No. 03CA2114.

Colorado Court of Appeals,
Div. III.

May 4, 2006.

Certiorari Denied Oct. 16, 2006.

252

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, Julie A. Bostic, appeals the judgment of conviction entered upon jury verdicts finding her guilty of eight counts of possession and possession with intent to distribute controlled substances and marijuana. We affirm.

Four uniformed police officers responded to a motel based upon a complaint of suspicious drug activity in a room registered to defendant. Because the police did not have probable cause to obtain a search warrant for the room, they used a tactic known as "knock and talk," where police first ask the occupant for permission to enter the room and then ask for permission to search for drugs or other contraband.

The police knocked on the door to the motel room, and defendant answered. One of the officers asked to speak with her. When defendant stepped outside to talk, the officer asked to talk inside the room. Defendant said, "Sure," stepped back, and allowed the four officers to enter the room. Although the evidence was conflicting on whether the police asked for defendant's consent to search the room, there is no evidence in the record that defendant ever consented to a search.

As the police entered the room, one officer saw a man, later identified as defendant's boyfriend, place something in the nightstand drawer and partially close the drawer, leaving an opening of about an inch and a half. The officer walked to the nightstand, and, without moving anything, looked into the drawer and saw a syringe with clear liquid in it, which was later identified as liquid amphetamine. He also saw a partially smoked marijuana cigarette on the nightstand, and there was also a glass marijuana pipe with apparent drug residue in it on the bed. The officer then seized the syringe and handcuffed the boyfriend. Another officer handcuffed defendant. As her boyfriend was handcuffed, defendant stated, "That's mine, it's not his, I have a drug problem."

Incident to the arrests, and based on information provided by the boyfriend, the officers searched the room and found cocaine, methamphetamine, marijuana, and a digital scale. After defendant asked one of the officers to retrieve her purse, the officer did so and found cocaine and marijuana in the purse.

Defendant was charged with eight counts of possession of controlled substances and marijuana and possession with intent to distribute controlled substances and marijuana under §§ 18–18–405 and 18–18–406, C.R.S. 2005. Prior to trial, defendant filed motions to suppress both physical evidence obtained by the police and statements she made in the motel room and at the police station. After a pretrial hearing, the trial court denied the motions to suppress.

A jury convicted defendant on all eight counts, and the trial court sentenced her to concurrent sentences amounting to six years incarceration in the Department of Correc-

tions and five years parole. This appeal followed.

## I.

Defendant contends that the trial court erred by not granting her motion to suppress the syringe, the drugs, and paraphernalia found by the police, and the statements she made in the motel room. Specifically, defendant contends that the trial court erred by finding (1) that she voluntarily consented to the entry of the police into her motel room to speak with her, and (2) that the syringe was validly seized because it was in plain view. We disagree.

The Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution protect citizens and their homes from unreasonable searches and seizures. *People v. Mendoza–Balderama,* 981 P.2d 150, 156 (Colo.1999). Absent some recognized exceptions, searches and seizures inside a home without a warrant are presumptively unreasonable. *People v. Mendoza–Balderama, supra,* 981 P.2d at 156.

The "fruit of the poisonous tree" doctrine provides that evidence derived from or acquired by the police through unlawful means, such as an illegal entry, is inadmissible in criminal prosecutions. *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); *People v. Schrader,* 898 P.2d 33, 37 (Colo.1995).

Appellate review of a ruling on a motion to suppress is a mixed issue of law and fact. *People v. Pitts,* 13 P.3d 1218, 1222–23 (Colo.2000). If competent evidence supports the trial court's findings of fact, we give deference to them, setting them aside only if they are clearly erroneous or unsupported by the record. *People v. Platt,* 81 P.3d 1060, 1065 (Colo.2004). The trial court's legal conclusions are subject to de novo review. *People v. Pitts, supra,* 13 P.3d at 1222.

## A.

Defendant first contends that the trial court erred by finding that she voluntarily consented to the officers' request to enter and talk with her inside the motel room. We disagree.

It is constitutionally permissible for police officers to knock at the entrance to a residence and seek permission to enter for the purpose of inquiry, and, if the occupant validly consents, the officers may enter without a warrant. *People v. Milton,* 826 P.2d 1282, 1285 (Colo.1992). Whether an individual's consent to entry was voluntary is a matter of fact to be determined under the totality of the circumstances. *People v. O'Hearn,* 931 P.2d 1168, 1174 (Colo.1997); *People v. Milton, supra,* 826 P.2d at 1286. The prosecution must demonstrate by clear and convincing evidence that consent to enter the premises was freely given. *People v. O'Hearn, supra,* 931 P.2d at 1173. Consent is voluntarily given if it is not the result of duress or coercion, express or implied, or any other form of undue influence exercised against the defendant. *People v. Milton, supra.*

Here, the trial court found, with record support, that when the officer knocked on the door, defendant answered it; that defendant started to step outside the room to talk; and that, when asked by the officer whether they could speak with her inside, she stepped back, held the door open, and allowed the officers into the room. Further, although the trial court did not make a specific finding concerning any verbal consent by defendant, the record reflects that she responded "[S]ure" to the officers' request to speak with her inside the room. *See United States v. Carter,* 378 F.3d 584, 589 (6th Cir.2004)("Although a man's home is his castle, trumpets need not herald an invitation. The police may be kept out or invited in as informally as any other guest."). The trial court's findings are neither clearly erroneous nor unsupported by the record. Accordingly, we perceive no error in the trial court's conclusion that defendant voluntarily consented to the officers' entry into the room and their request to talk with her inside.

We decline defendant's request that we adopt the guidelines for police "knock and talk" procedures announced by the Washington Supreme Court in *State v. Ferrier,* 136

Wash.2d 103, 960 P.2d 927 (1998). Our supreme court has provided ample guidance and articulated clear legal standards for determining whether a defendant has voluntarily consented to police entry into his or her home. *See People v. Mendoza–Balderama, supra; People v. O'Hearn, supra; People v. Milton, supra.* Applying that existing precedent, we conclude that, based on the totality of the circumstances, the trial court did not err in finding that defendant voluntarily consented to the entry of the police into her motel room.

### B.

Defendant also contends that, even if consent to enter her motel room was voluntary, the trial court erred by finding that the syringe was in plain view and thus validly seized by the police. Again, we disagree.

A warrantless search and seizure will be found unreasonable unless justified by an established exception to the Warrant Clause of the Fourth Amendment. *People v. Pitts, supra,* 13 P.3d at 1222. The plain view doctrine is one such exception. *People v. Pitts, supra; People v. Dumas,* 955 P.2d 60, 63 (Colo.1998). Consent to enter for purposes of inquiry may support seizure of evidence falling within the plain view doctrine. *People v. Milton, supra,* 826 P.2d at 1284–85.

A police officer, without a warrant, may seize evidence in plain view if the initial intrusion onto the premises was legitimate, if the police had a reasonable belief that the evidence was incriminating, and if the police had a lawful right of access to the object. *People v. Pitts, supra,* 13 P.3d at 1222; *People v. Campbell,* 94 P.3d 1186, 1188 (Colo.App.2004). Under the plain view exception to the warrant requirement, "police are not required to close their eyes to any evidence that they plainly see." *People v. Pitts, supra,* 13 P.3d at 1222; *People v. Campbell, supra,* 94 P.3d at 1188. The initial intrusion must be within the scope of consent, which is "determined by 'objective reasonableness'—what a reasonable person would have understood by the exchange between the officer and the suspect." *People v. Dumas, supra,* 955 P.2d at 63 (consent to search defendant's motel room for drugs, weapons, or contraband reasonably included search of everything likely to contain those items).

A reasonable belief that evidence is incriminating exists when the incriminating nature of the evidence is immediately apparent to the seizing officer. *See People v. Pitts, supra,* 13 P.3d at 1222; *People v. Campbell, supra,* 94 P.3d at 1188. The "immediately apparent" requirement is satisfied if, without further search, police have probable cause to associate an item with criminal activity. *People v. Campbell, supra.*

When a police officer moves an object not within the scope of consent or lawful search, the intrusion becomes a separate search and departs from the plain view doctrine. *Arizona v. Hicks,* 480 U.S. 321, 324–25, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (items not in plain view when police moved stereo to reveal serial numbers during the course of search for different items). However, an officer may observe and record information that is in plain view without moving an object, because, under those circumstances, no possessory interest is involved. *See People v. Conley,* 804 P.2d 240, 245 (Colo.App.1990)(police officer conducting consent search for identification may see and record serial number on stereo equipment if he does not move the equipment for that purpose); *see also People v. White,* 64 P.3d 864 (Colo.App.2002)(officer invited into home properly seized tennis shoes in plain view on the floor, which appeared to have blood on them and soles that matched shoeprints at scene of a crime).

As we have already concluded, the police officers had consent to enter the room to talk, and, therefore, the initial intrusion onto the premises was legitimate. *See People v. Milton, supra.* Further, the record shows that the seizing officer had a reasonable belief that the syringe was incriminating evidence. In that regard, a syringe is an item that may be associated with criminal activity, and the nearby presence in the motel room of the marijuana cigarette and drug pipe further provided the officer with a reasonable

belief that the syringe was incriminating evidence.

Defendant argues, however, that because the officer had to walk over and stand next to the nightstand to see the syringe, the police did not have lawful access to it. We disagree.

Contrary to defendant's argument, a police officer who has consent to enter a room to talk generally may move around the room, at least in the circumstances present here. *See United States v. Carter, supra,* 378 F.3d at 589 ("Once invited into [defendant's] hotel room to talk, [the officer] had the latitude of a guest in the room unless restricted by [the defendant] himself. Thus, there was nothing improper in [the officer's] decision to take the few steps to the table . . . .").

Here, when the officer stood near the nightstand, he was able to look into the partially open drawer, without moving or touching anything, and observe the syringe filled with fluid. Contrary to defendant's contention, we discern no evidence in the record that the officer bent down before the moment when he retrieved the syringe. Accordingly, because he could reasonably believe the syringe was incriminating, and he had lawful access to it, he was free to seize it under the plain view doctrine.

Although we have found no Colorado cases that specifically apply the plain view doctrine to objects in open drawers, courts in other jurisdictions have held that the plain view exception applies in such circumstances, and we have discovered no cases holding to the contrary. *See United States v. Gravier,* 532 F.Supp. 876 (S.D.Ohio, 1982)(plain view exception applied where drug enforcement agent standing near a chest of drawers saw plastic bags inside the top drawer, which was partially open about an inch and a half), *aff'd,* 706 F.2d 174 (6th Cir.1983); *Spinkellink v. State,* 313 So.2d 666 (Fla.1975)(hypodermic needle and gun found in drawer open about eight inches fell within plain view exception); *State v. Hall,* 555 So.2d 495 (La.Ct.App. 1989)(plain view exception properly applied when officer saw cellophane bags and small foil packets inside nightstand drawer open approximately five inches).

Further, we disagree with defendant's contention that the Supreme Court's decision in *Arizona v. Hicks, supra,* requires a contrary result. In *Hicks,* the Supreme Court determined that a police officer's act of moving stereo equipment to reveal serial numbers did not fall within the plain view exception to the warrant requirement. Here, in contrast, the police officer did not pick up or move the drug syringe before he noticed its incriminating character, nor did he open or move the dresser drawer. *See People v. White, supra,* 64 P.3d at 871.

## C.

■ Because we conclude that the drug syringe was validly seized pursuant to the plain view exception, we necessarily reject defendant's contention that the other drugs and paraphernalia and defendant's initial spontaneous statement in the motel room should have been suppressed as fruit of the poisonous tree. *See People v. Schrader, supra.* The physical evidence was properly discovered and seized pursuant to a search incident to a lawful arrest, and defendant's statement immediately after the syringe was discovered was spontaneous and not the result of any illegal activity on the part of the police.

## II.

■ Defendant next contends that statements she made during questioning by an officer at the police station, while she was in custody and after she had been given *Miranda* warnings, should have been suppressed, because her waiver of her right to remain silent was not voluntary, but rather was coerced. Specifically, defendant contends that an earlier comment the officer made to her while they were in the patrol car amounted to an implied threat or promise and, thus, negated the voluntariness of her subsequent waiver of her *Miranda* rights at the police station. We are not persuaded.

■ In reviewing a motion to suppress a custodial statement and a trial court's determination of the validity of a *Miranda* waiver, we defer to the trial court's findings of fact if they are supported by competent evidence in

the record, but review the legal effect of those facts de novo. *People v. Humphrey,* 132 P.3d 352 (Colo.2006); *People v. Valdez,* 969 P.2d 208, 211 (Colo.1998).

■ When a defendant challenges the voluntariness of either a *Miranda* waiver or a custodial statement, the prosecution must establish by a preponderance of the evidence that the defendant made the statement voluntarily. *People v. Humphrey, supra; People v. Valdez, supra,* 969 P.2d at 210.

■ The totality of the circumstances test should be applied in analyzing the voluntariness of a *Miranda* waiver or of a confession. *See Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *People v. Humphrey, supra; People v. Valdez, supra,* 969 P.2d at 211; *People v. Wickham,* 53 P.3d 691, 694–95 (Colo.App.2001); *People v. McCormick,* 881 P.2d 423 (Colo. App.1994).

■ In assessing whether a waiver of *Miranda* rights was involuntary, we are concerned with whether the waiver was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *See People v. Humphrey, supra.* Similarly, critical to any finding of involuntariness of a confession or an inculpatory statement is the existence of coercive governmental conduct, either physical or mental, that plays a significant role in inducing the confession or statement. *People v. Valdez, supra,* 969 P.2d at 211 (for threats and promises to render a confession involuntary, they must have caused the defendant to confess, for example, where police have promised leniency in exchange for a confession or have threatened harmful consequences unless the defendant confesses). In essence, the question at issue is whether the individual's will has been overborne. *People v. Valdez, supra.*

Here, the record shows that, at trial, one of the officers testified that, in the patrol car, he advised defendant of her *Miranda* rights and then told her that the police had located a quantity of drugs and that she should probably be cooperative, if at all possible. At trial, the officer testified that defendant replied that she did not know what to do, but did not respond to his question about where she had obtained the drugs.

After objection by defendant, the trial court struck this last statement, which had not been disclosed at the suppression hearing. Out of the presence of the jury, the court reopened the suppression hearing to determine whether the officer's comment to defendant in the patrol car was an implied threat or promise that rendered her subsequent waiver of her *Miranda* rights and statements at the police station involuntary.

The trial court found that, after being advised of her *Miranda* rights in the patrol car by the first officer, defendant was advised again by another officer while in the patrol car. At the station, the second officer interviewed defendant, but was unable to get a statement because they were "not getting along very well."

The first officer then spoke with defendant, again advised her of her rights, and, after about twenty minutes, defendant indicated that she was willing to make a statement, although she would not disclose the names of her suppliers. Because defendant did not have her glasses, the officer wrote out her statement, and defendant signed it. It read, "[The boyfriend] has nothing to do with the drugs that were found in the room. I'm just a drug addict and I need help. I apologize for having the drugs I needed them."

The trial court found that this statement was a knowing, intelligent, and voluntary waiver of her right to remain silent and that the officer's comment to her in the patrol car was not coercive.

Considering the totality of the circumstances surrounding defendant's statement, we conclude that the officer's comment that the police had found a quantity of drugs and that defendant should probably be cooperative did not constitute either a threat or a promise, and that the trial court properly concluded that defendant's statement and waiver of her *Miranda* rights at the police station was voluntary. The officer never told defendant he would provide specific help in exchange for a confession, and he never threatened any action against defendant if

she refused to confess. *See People v. Wickham, supra,* 53 P.3d at 696 (detective's comment, "This is what's going to help you, bud," did not rise to the level of a promise, because no specific help was offered in exchange for a confession; and, although detective suggested that defendant's companion would implicate defendant, detective did not threaten any action against defendant if he refused to confess).

Moreover, nothing in the record indicates that the officer's comment in the patrol car caused defendant to confess. Defendant gave no concrete information and did not reveal her suppliers, and even her written statement was substantially a repetition of her spontaneous outburst in the motel room that she was a drug addict and that the drugs were hers and not her boyfriend's.

Accordingly, considering the totality of the circumstances, we conclude the trial court did not err in denying the motion to suppress defendant's statements made at the police station.

### III.

■ For the first time on appeal, defendant contends that the elemental jury instructions for the counts of possession and possession with intent to distribute cocaine and methamphetamine violated her due process rights. Specifically, she contends that, because the elemental instructions referred to the locations where the drugs were found, they implied to the jury the existence of a fact that the prosecution was obligated to prove (possession by defendant), rather than requiring the prosecution to prove that fact beyond a reasonable doubt, and that, accordingly, she is entitled to a reversal of her conviction. We disagree.

■ Because defendant did not object to the instructions at trial, we review for plain error. *See People v. Miller,* 113 P.3d 743 (Colo.2005). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the conviction. *People v. Miller, supra.*

■ "Moreover, an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *See People v. Miller, supra,* 113 P.3d at 750; *see also People v. Rivas,* 77 P.3d 882, 886 (Colo.App.2003)(quoting *People v. Cowden,* 735 P.2d 199, 202 (Colo.1987): "Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial.").

Here, the trial court prefaced the elemental instructions for each of the six controlled substances counts as follows:

Count No. One: As to alleged Methamphetamine found under mattress;

Count No. Two: As to alleged Methamphetamine found under mattress;

Count No. Three: As to alleged Methamphetamine found in syringe;

Count No. Four: As to alleged Cocaine found under mattress;

Count No. Five: As to alleged Cocaine found under mattress; and

Count No. Six: As to alleged Cocaine found in purse.

Although defendant did not object to the form of the instructions at trial, she now contends that the instructions constitute reversible error because they instructed the jury that it was a proven, rather than alleged, fact that the six substances were found in the various specified locations. We perceive no reversible error.

The record reflects that defendant stipulated to the laboratory results demonstrating that the substances found in the motel room and in defendant's purse were, in fact, cocaine and methamphetamine. Further, undisputed testimony at trial demonstrated that the drugs in question were found at the specified locations.

Contrary to defendant's argument, the prosecution was not obligated to prove that the drugs were found in particular locations, because location was not an element of the crimes charged under § 18-18-405. Rather, the jury instructions correctly instructed the jury that possession was an element of the

crime, which the prosecution had to prove beyond a reasonable doubt, and the instructions also gave the jury a complete and accurate definition of "possession." Therefore, the instructions did not lessen the prosecution's burden of proof.

Moreover, the locations where the drugs were found were not contested at trial. Accordingly, even if there was error in the form of the instructions, it did not rise to the level of plain error. *See People v. Miller, supra.*

## IV.

Finally, defendant contends that her Sixth Amendment right to counsel was violated because she had a conflict with her counsel, and the trial court erred by not inquiring further into that conflict to determine whether there had been a complete breakdown in communication. We disagree.

The Sixth Amendment to the United States Constitution and Colo. Const. art. II, § 16, guarantee a defendant the right to effective assistance of counsel. *See People v. Arguello,* 772 P.2d 87, 92 (Colo.1989); *People v. Edebohls,* 944 P.2d 552, 556 (Colo.App. 1996). A defendant's right to effective assistance of counsel includes the right to conflict-free representation. *People v. Edebohls, supra.* However, the right to counsel guarantees only competent representation, and does not necessarily include a meaningful attorney-client relationship. *People v. Arguello, supra.*

An accused who desires and is financially able to secure counsel of his or her own choice should be afforded a fair opportunity to do so, and defendants who retain their own lawyers are entitled to the same protection under the Sixth Amendment as defendants with court-appointed counsel. *See People v. Campbell,* 58 P.3d 1148, 1155 (Colo. App.2002); *see also Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).

When the trial court is on notice of a conflict between the defendant and his or her counsel, it has a duty to inquire into the propriety of continued representation by current counsel. *People v. Campbell, supra,*

58 P.3d at 1156; *People v. Edebohls, supra.* If the defendant can establish good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict that may lead to an apparently unjust verdict, the court is required to substitute new counsel. *See People v. Arguello, supra; People v. Jenkins,* 83 P.3d 1122 (Colo.App.2003). In general, a conflict of interest exists when an attorney's representation of one client is directly adverse to another client, or when the attorney's ability to represent a client is materially limited by the attorney's responsibility to someone else, or by the attorney's own interests. *People v. Edebohls, supra.*

Before a change of counsel is warranted, the trial court must verify that the defendant has some well-founded reason for believing that the appointed attorney cannot or will not competently represent him or her. *People v. Arguello, supra; People v. Jenkins, supra.* The timeliness of a defendant's request for new counsel is a consideration, because when a defendant makes an untimely request for new counsel on the eve of trial, the court must carefully inquire into the defendant's reasons for the request to determine whether they are sufficiently substantial to justify postponing the trial. *People v. Arguello, supra.*

A defendant's motion to discharge an attorney is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on review absent an abuse of discretion. *People v. Jenkins, supra,* 83 P.3d at 1125.

Here, the record shows that defendant had retained private defense counsel, who had participated in plea negotiations and at three hearings, as well as at the hearing on the motion to suppress.

On the morning of trial, defendant complained to the trial court that her counsel had not represented her to the best of his ability because he had not visited her in jail and had not inquired about her other pending cases. Defendant also expressed her hesitation about accepting the plea agreement her counsel had negotiated (and, which she ultimately rejected). However, defendant did

not request new counsel or indicate that she had decided to terminate her current counsel. Further, she did not allege a specific conflict of interest or a complete breakdown of communication.

The trial court responded that defense counsel had presented a very good argument at the hearing on the motion to suppress, that he was present and ready for trial, and that he had negotiated a plea bargain for all defendant's pending cases that was "one of the sweetest deals" the court had seen.

Defendant indicated that she was not impressed with the offered plea bargain and complained that counsel "didn't show up for half of [her] court dates." Further, she stated that counsel told her he would file a "reconsideration" of motions but had not done so. The trial court explained to defendant that reconsideration of motions happened only on appeal and that an appeal could not be filed until her case was over.

Defendant responded, "Okay," then started to say, "And four and a half years is something—."

At this point, the trial court interrupted defendant, stating, "You have had your say."

The trial court again explained to defendant that, considering the number of charges against her, the proposed plea deal was a good one, and said, "[I]n terms of [defense attorney's] preparation, his presentation so far and working in your best interest, the court finds that, in fact, he has done everything he could for you and has done a very good job for you."

Defendant then decided to accept the plea, but shortly afterward, rejected it again and went to trial.

On appeal, defendant contends that the trial court should have inquired further into her dissatisfaction with her retained counsel. However, she identifies no specific conflict of interest with counsel, nor does she claim ineffective assistance of counsel. Her only claim is that the court should have made a fact-specific inquiry as to whether there had been an irreconcilable breakdown in communication between her and her counsel.

In our view, the record substantiates that defendant's expressed dissatisfaction with her counsel did not constitute an assertion of conflict of interest. She did not move to discharge him from the case. She showed no well-founded reason for believing that her attorney could not completely represent her interests, nor did she show a complete breakdown in communication. The trial court addressed all defendant's expressed concerns regarding her counsel, including her displeasure with the offered plea bargain (which was for a significantly shorter sentence for all her pending cases than she received on this case alone). *See People v. Jenkins, supra,* 83 P.3d at 1126 (no need to appoint new counsel where defendant asserts no conflict of interest and has shown neither a complete breakdown of communication nor prejudice). While it may have been better practice for the trial court not to interrupt defendant and preclude further argument on her part, the record reflects that in context, when the trial court told defendant she had had her "say," defendant was simply repeating arguments she had already made expressing her dissatisfaction with the plea offer, which she ultimately rejected, rather than stating any specific conflicts with her counsel. *See People v. Jenkins, supra* (general complaints by defendant that do not show prejudice do not require further inquiry).

Because defendant had private counsel, she could have dismissed him at any time and hired new counsel. She showed no substantial reason why her jury trial should have been postponed, particularly because she chose to wait until the morning of trial to express her displeasure with her own privately retained counsel.

Under the circumstances, we thus perceive no duty on the part of the court to inquire further into defendant's dissatisfaction with her counsel.

The judgment is affirmed.

TAUBMAN and HAWTHORNE, JJ., concur.