**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Anthony G. PRESCOTT, Defendant–Appellant.**

**No. 05CA1380.**

Colorado Court of Appeals, Div. VI.

Aug. 7, 2008.

Rehearing Denied Sept. 18, 2008.

John W. Suthers, Attorney General, John Lee, Assistant Attorney General, Sean Moy-nihan, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sarah Burtis, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Anthony G. Prescott, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of a schedule II controlled substance, § 18–18–204, § 18–18–405(1)(a), (2)(a)(I), C.R.S.2007, and possession of drug paraphernalia, § 18–18–428, C.R.S.2007. We conclude that evidence should have been suppressed because Prescott did not impliedly consent to a warrantless search, and therefore we reverse and remand for a new trial.

## I. Facts

Before trial, Prescott moved to suppress evidence seized in his hotel room and statements he made at the hotel before he had been given a *Miranda* warning. After an evidentiary hearing at which only police officers testified, the trial court denied the motion on the basis that Prescott had impliedly consented to their entry into the room.

According to uncontroverted testimony at the suppression hearing, two police officers responded to the hotel based on an anonymous telephone call about a disturbance in Prescott's room. When they knocked on the hotel room door, a woman answered. Prescott was and remained inside, either seated or standing.

One of the officers, Sergeant Wunderlich, immediately took the woman down the hallway, leaving Prescott alone in the room. Without requesting permission to enter, the second officer, Deputy Wilson, stepped "a couple of feet into the door" of the room and asked Prescott to identify himself, which he did. Prescott told Deputy Wilson that the woman had stolen money from him, that she had slapped him, and that he had slapped her back. Then Prescott asked Deputy Wilson to help him get his money back.

Meanwhile, the woman told Sergeant Wunderlich that Prescott had accused her of

stealing money from him, that he had slapped her, and that there were drugs on the desk in the room. He noticed that she appeared to have a red mark on her face. Leaving the woman in the hallway, Sergeant Wunderlich returned to the room and walked in. He, too, did not request permission to enter. Once inside, he looked on the desk and told Deputy Wilson that he saw "three small little white pebbles that [he] recognized as cocaine," a "little scale used to weigh ... narcotics," and "Zigzag rolling papers made for rolling cigarettes or rolling marijuana cigarettes."

When one of the officers asked about the items, Prescott responded that he had a drug problem and that the cigarettes on the desk had been dipped in cocaine. He was arrested, handcuffed, and escorted outside the hotel. On the way to his patrol car, Deputy Wilson asked another officer who had arrived at the hotel to test the drugs. Prescott stated, "it's cocaine, I know, I bought it." Thereafter, Deputy Wilson gave Prescott a *Miranda* warning in the patrol car.

## II. Motion to Suppress

Prescott contends that because he did not consent to Deputy Wilson's entry into his hotel room, the trial court should have suppressed the cocaine and drug paraphernalia found by the officers, as well as his statements inside and outside the hotel room before he was given a *Miranda* warning. We agree.

■ Warrantless searches and seizures are presumptively invalid under the Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution unless justified by an established exception to the warrant requirement. *People v. Gothard,* 185 P.3d 180, 183 (Colo. 2008); *People v. Bostic,* 148 P.3d 250, 254 (Colo.App.2006).

■ A registered guest in a hotel room has a legitimate expectation of privacy in both the room and its contents, and thus is entitled to protection against unreasonable searches and seizures. *People v. Lewis,* 975 P.2d 160, 169 (Colo.1999); *People v. Schafer,* 946 P.2d 938, 944 (Colo.1997).

In *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court stated: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent the exigent circumstances, that threshold may not reasonably be crossed without a warrant." *See McCall v. People,* 623 P.2d 397, 402 (Colo.1981) ("This rule is no stranger to Colorado jurisprudence.") (citing *Payton* ). "Further, '*Payton* did not draw the line one or two feet into the home; it drew the line at the home's entrance.'" *State v. Clark,* 844 S.W.2d 597, 599 (Tenn.1992)(quoting *United States v. Berkowitz,* 927 F.2d 1376, 1388 (7th Cir.1991)).

■ Voluntary consent to a search is an exception to the warrant requirement. *People v. Lehmkuhl,* 117 P.3d 98, 102 (Colo.App. 2004). The prosecution has the burden of proving that consent was obtained before a search was initiated and that it was freely and voluntarily given. *People v. Castro,* 159 P.3d 597, 600 (Colo.2007). The prosecution must prove voluntariness by clear and convincing evidence. *People v. Magallanes–Aragon,* 948 P.2d 528, 530 (Colo.1997). Before reaching the voluntariness question, however, the prosecution must prove that the defendant by his conduct, words, or both, gave permission to search. *People v. Herrera,* 935 P.2d 956, 959 (Colo.1997).

■ Appellate review of a ruling on a motion to suppress is a mixed question of law and fact. *People v. Bostic,* 148 P.3d at 254. We set aside the trial court's factual findings only if they are clearly erroneous or unsupported by the record. *Id.* The trial court's legal conclusions are reviewed de novo. *Id.* An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings is subject to correction by a reviewing court. *People v. Quezada,* 731 P.2d 730, 732–33 (Colo.1987).

■ Where, as here, neither authority nor voluntariness is at issue, consent is a factual determination for the trial court. *People v. Milton,* 826 P.2d 1282, 1286 (Colo. 1992). However, because the facts relevant to consent are undisputed, we review de

novo. *See, e.g., People v. King,* 16 P.3d 807, 812 (Colo.2001).

The Attorney General agrees that Deputy Wilson did not request consent to enter the hotel room and that neither the woman nor Prescott expressly consented to his entry. Further, nothing in the record indicates that either Prescott or the woman expressly consented to Sergeant Wunderlich's entry. Therefore, we address only implied consent.

### A. Implied Consent

Our supreme court has stated that consent to a warrantless search may be expressed or "implied from the 'totality of the circumstances'." *People v. Berow,* 688 P.2d 1123, 1127 (Colo.1984) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973))(search of an apartment). However, it has not addressed what circumstances sufficiently imply consent to a warrantless entry into a home or hotel room. *Cf. Mathis v. People,* 167 Colo. 504, 510, 448 P.2d 633, 636 (1968)(finding implied consent to enter and return a vehicle where police were looking for a specific vehicle in connection with a robbery and were notified by defendant's fiancée that the vehicle she loaned to defendant was missing).

In *People v. O'Hearn,* 931 P.2d 1168, 1173–74 (Colo.1997), the supreme court concluded that the defendant did not consent to entry where both officers testified that when the defendant opened the door to her home, they "walked right in without obtaining permission to enter." Further, consent to enter a home may not be shown from the defendant's failure to object to the entry. *People v. Santisteven,* 693 P.2d 1008, 1012 (Colo.App. 1984).

Other jurisdictions have recognized implied consent to the search of a hotel room under the following circumstances: defendant gestured to the officer that he could use the key to unlock the hotel room door, *United States v. Cotnam,* 88 F.3d 487, 495 (7th Cir.1996); defendant opened motel room door with his key and allowed officers to enter the room, *State v. Knapp,* 120 Idaho 343, 815 P.2d 1083, 1089 (App.1991); defendant "voluntarily opened the door when he saw uniformed officers" and "walked away without responding to the officers' questions," *Commonwealth v. Daniels,* 280 Pa.Super. 278, 421 A.2d 721, 723 (1980). *See also State v. Flippo,* 212 W.Va. 560, 575 S.E.2d 170, 183 (2002)("a crime is reported ... by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person").

We view these cases as well reasoned, consistent with *Mathis v. People,* and proper applications of the general principle that "consent is 'implied' because it is found to exist merely because of the person's conduct in engaging in a certain activity." 4 Wayne R. LaFave, *Search and Seizure; A Treatise on the Fourth Amendment* § 8.2(*l* ), at 122 (2004).

Here, in denying the motion to suppress the trial court explained:

> The Court finds from the evidence here that [Deputy Wilson] entered by implied consent that was given by Mr. Prescott. Mr. Prescott did not verbally say yes you may come in or sure you may come in as referenced in the *Clouse* case, but when the officer wanted to speak to him about the event and in fact Mr. Prescott wanted to make a complaint about [the woman] and her taking his money and him wanting her to be arrested and what the officer could do to accomplish that, he did that within his room and the officer was there.

> The Court finds looking at the totality of the circumstances that the officer did in fact enter by consent of Mr. Prescott so he was legally on the premises and within the premises at the time he was first speaking to Mr. Prescott.

> The Court finds that consent was given. The evidence clearly and convincingly establishes that. He was entering as a result of being called to the scene but he was entering to speak to Mr. Prescott who also wanted to speak to him because he was trying to get [the woman] arrested, taken away with respect to issues about his money.

> So, the Court finds this was a consensual entry at that point. The officer according-

ly was lawfully in the premises at the time he had contact with Mr. Prescott.

. . .

In addition, the Court finds when Sergeant Wunderlich entered the premises, law enforcement were already on the premises having been given implied consent by Mr. Prescott based upon the Court's earlier findings.

The cases that have recognized implied consent do not support the suppression ruling, for the following reasons:

- Unlike in *Flippo,* the persons in control of the hotel room, Prescott and hotel management, had not summoned police by reporting a crime.
- Unlike in *Knapp* and *Clark,* Prescott did not open the hotel room door when the officers knocked.
- Unlike in *Daniels,* Prescott did not back away or walk away from the door after it had been opened.
- Unlike in *Cotnam,* Prescott did not otherwise make a gesture concerning entry into the room.

■■■ We reject the Attorney General's argument that by asking Deputy Wilson for help getting his money back, Prescott implied an "invitation for the officers to enter," *Clark,* 844 S.W.2d at 599, because Deputy Wilson entered without permission *before* beginning the dialogue with Prescott. The Attorney General has cited no authority, nor are we aware of any in Colorado, adopting such an after-the-fact justification to a warrantless entry based on consent. *Cf. People v. Herrera,* 935 P.2d at 958 ("The admissibility of evidence seized pursuant to an allegedly consensual search must stand or fall on the basis of the consent given before the search.").

Other jurisdictions have rejected after-the-fact justification for warrantless searches. *See, e.g., People v. Pereira,* 150 Cal.App.4th 1106, 58 Cal.Rptr.3d 847, 854 (2007); *State v. Williams,* 168 N.J.Super. 359, 403 A.2d 31, 35 (App.Div.1979); *State v. Ribe,* 876 P.2d 403, 414–15 (Utah App.1994).

Moreover, "[i]t is one thing to infer consent from actions responding to a police request. It is quite another to sanction the

police walking in to a person's home without stopping at the door to ask permission." *United States v. Shaibu,* 920 F.2d 1423, 1427 (9th Cir.1990). Further, "consent to enter and search a home will not be lightly inferred...." *Clark,* 844 S.W.2d at 599. Hence, we agree with *State v. Othoudt,* 482 N.W.2d 218, 223 (Minn.1992), that "[w]hen an uninvited police officer enters a home without a warrant and begins asking questions, answering those questions does not indicate an individual consented to the entry."

Therefore, we conclude that the trial court erred in finding that Prescott impliedly consented to Deputy Wilson's entry into the hotel room.

■■■ We also reject the Attorney General's assertion that Sergeant Wunderlich made a separate, lawful entry to arrest Prescott based on the woman's accusation and the red mark on her face. Even if Sergeant Wunderlich then had probable cause to arrest Prescott for assault, he could not enter the hotel room to effect a warrantless arrest absent consent or exigent circumstances. *People v. Holmes,* 981 P.2d 168, 171 (Colo. 1999); *People v. Breland,* 728 P.2d 763, 765 (Colo.App.1986).

The record contains no suggestion that Prescott impliedly consented to Wunderlich's entry. Nor did the prosecution below or the Attorney General on appeal argue that the woman impliedly consented, even assuming she would have had the authority to do so.

■■■ Further, the record supports the trial court's finding that "this is not an entry in hot pursuit or some exigent circumstances." Evidence of the assault was not at risk of immediate destruction. *See Mendez v. People,* 986 P.2d 275, 282 (Colo.1999). Prescott posed no threat to the officers' safety. *See People v. Aarness,* 150 P.3d 1271, 1278 (Colo. 2006). And no one in the hotel room needed the officer's protection. *Cf. Georgia v. Randolph,* 547 U.S. 103, 118, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence....").

Given our conclusion that Deputy Wilson's entry was unlawful, the Attorney General's reliance on cases where another officer had already lawfully entered the premises is misplaced. *See, e.g., United States v. Romero,* 452 F.3d 610, 618–19 (6th Cir.2006); *United States v. Green,* 474 F.2d 1385, 1390 (5th Cir.1973); *People v. Duncan,* 42 Cal.3d.91, 227 Cal.Rptr. 654, 720. P.2d 2, 6–7 (1986); *State v. Hume,* 512 So.2d 185, 189 (Fla.1987); *State v. Bell,* 108 Wash.2d 193, 737 P.2d 254, 259 (1987), *abrogated by Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *La Fournier v. State,* 91 Wis.2d 61, 280 N.W.2d 746, 750–51 (1979). Hence, we do not express an opinion on the holdings in these cases.

Accordingly, we further conclude that the trial court erred in finding that Sergeant Wunderlich's entry was proper.

### B. Fruit of the Poisonous Tree

We also agree with Prescott that the cocaine, drug paraphernalia, and statements he made at the hotel should have been suppressed as fruits of an illegal entry and search.

The "fruit of the poisonous tree" doctrine provides that evidence obtained by the police through unlawful means, such as an illegal entry, is inadmissible and must be suppressed. *Bostic,* 148 P.3d at 254. However, this doctrine is not simply a "but for" analysis of evidence seized following illegal actions of the police. *Lewis,* 975 P.2d at 170.

One exception to the fruit of the poisonous tree doctrine rests on attenuation, which allows the admission of evidence obtained following an illegal search when the connection between the lawless conduct of the police and their discovery of the challenged evidence is so attenuated as to dissipate the taint. *Id.* The prosecution bears the burden of establishing this exception. *People v. Brandon,* 140 P.3d 15, 21 (Colo.App. 2005).

Here, the Attorney General argues that Prescott's request for assistance was· sufficiently attenuated to remove any taint from Deputy Wilson's entry. *See generally Lewis,* 975 P.2d at 173–74 (discussing three-prong test for attenuation exception). However, the record lacks pertinent findings because the prosecutor did not raise attenuation below. *See Moody v. People,* 159 P.3d 611, 616 (Colo.2007) (noting appellate court's "tenuous position of resolving fundamental facts that had not been identified during the suppression hearing").

Further, the record shows that no time elapsed between Deputy Wilson's illegal entry and Prescott's request for assistance. *See People v. Eirish,* 165 P.3d 848, 858 (Colo. App.2007)("lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation but bears directly on the probability of taint"); *cf. People v. Fines,* 127 P.3d 79, 81–82 (Colo.2006) ("Because the defendant had been seized in violation of the Fourth Amendment at the time of her consent to search and other statements, without any suggestion of attenuation from the initial illegality, the trial court's suppression order is affirmed.").

Therefore, even assuming that attenuation can be raised for the first time on appeal, we reject it.

We also note that neither the prosecutor below nor the Attorney General on appeal argued that had the officers remained outside the hotel room while awaiting a warrant to arrest Prescott for assault, upon obtaining and executing that warrant the cocaine and drug paraphernalia would inevitably have been discovered. *See People v. McKinstrey,* 852 P.2d 467, 470 n. 4 (Colo.1993) ("The prosecution has not asserted that McKinstrey had no legitimate expectation of privacy ... and the issue was not raised in the trial court. Accordingly, we do not address the question....").

Finally, we requested the parties to address *People v. Davis,* 187 P.3d 562 (Colo. 2008), at oral argument. However, because all of the incriminating statements at issue were made before Prescott received a *Miranda* warning, and those statements directly related to the cocaine seized as fruit of Deputy Wilson's unlawful entry, *Davis* does not require their admission.

Having reversed the trial court's suppression ruling, we need not address Prescott's remaining contentions because they either will not or may not occur on retrial.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge LOEB and Judge GABRIEL, concur.