**STATE of Tennessee, Appellant,**

**v.**

**Carolyn J. CLARK, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Dec. 7, 1992.

Charles W. Burson, Atty. Gen., and Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, for appellant.

Dale M. Quillen, Richardson R. Lynn, Nashville, for appellee.

## OPINION

DROWOTA, Justice.

This search and seizure case concerns the admissibility of evidence discovered after a warrantless entry of a home. Specifically, we address the effect of an unconstitutional entry and subsequent arrest on the admissibility of evidence later seized from the home pursuant to a search warrant.

On August 13, 1987, Detective Donald Hargrove of the Metropolitan Police Department Auto Theft Division received an anonymous phone call stating that two stolen Lincoln automobiles could be found outside apartment N–269 of the 2131 Apartments in Nashville. The caller also advised that Carolyn Clark, the Defendant here, would be in possession of the cars.

Based on this information, Detective Donald Pugh, also of the Auto Theft Division, obtained the theft reports on two Lincoln Town Cars taken from Budget Rent-A-Car and the two detectives proceeded to the 2131 Apartments. There, they discovered two Lincoln Town Cars with dashboard Vehicle Identification Numbers matching those listed on the theft reports. After proceeding to the apartment manager's office and verifying that the Defendant Carolyn Clark resided in Apartment N–269, the detectives returned to the parking lot where they observed a young man, later identified as Defendant Carolyn Clark's adult son, who did not live at the apartment, walking away from the vicinity of the Lincolns. The detectives followed this individual to apartment N–269, where,

according to Detective Hargrove, the following exchange took place:

So we went to that apartment and knocked on the door and the young man came to the door, and we asked if Carolyn Clark was there. And he said, no. So we asked him if he lived there. And he said, no, that Carolyn Clark was his mother, and his name was Freddie Clark. So Detective Pugh said, well, we're inquiring about these two Lincoln Town Cars out here. Could you tell me anything about them? Mr. Clark said, well, the maroon one I've been driving for the last two weeks. ... Mr. Pugh informed him that that was a stolen car and that he would be charged with having that car in his possession.

Detective Pugh testified that Freddie Clark stepped back as he opened the door whereupon the detectives identified themselves and, without asking permission, entered the apartment. Detective Pugh also testified: "When we actually questioned him, we were just inside the apartment door, the front door of the apartment, kind of a foyer type area." Detective Hargrove described the officers' position as being "just inside the door, just a step or so."

After Freddie Clark admitted driving one of the Lincolns, the detectives placed him under arrest.

Sometime during their conversation with Mr. Clark, the detectives noticed a rifle in a corner of the living room and numerous purses, car keys, and credit cards sitting on a bar that separated the dining and kitchen areas. After Freddie Clark's arrest, Detective Pugh did a "walk-through" of the apartment to ascertain if anyone else was present. One of Defendant's daughters had been present and visible throughout the questioning; the walk-through uncovered no others. However, shortly after this walk-through, an apartment security guard arrived and told the detectives an individual had recently run out the back door of the apartment, gotten in a car with Carolyn Clark, and left the scene.

Backup officers were then called and the apartment secured while Detective Har-

grove left to obtain a search warrant. Several hours later Detective Hargrove returned with the warrant and the ensuing search resulted in the seizure of numerous incriminating items. Defendant was eventually apprehended and brought to trial on charges of forgery, passing forged papers, larceny, and receiving stolen property.

Defendant moved the trial court for suppression of the seized evidence on the ground the initial entry had been unlawful. The trial court denied the motion to suppress, finding that Mr. Clark's arrest had been made with probable cause, was therefore valid, making the protective sweep and the later search of the apartment valid. At trial, Defendant was convicted and sentenced to 25 years in the Department of Correction.

On appeal, the Court of Criminal Appeals reversed, holding that the evidence should have been suppressed. Based on the reasoning set forth below, we affirm the intermediate court's suppression of the evidence seized from Defendant's apartment.

### I.

■ We begin by scrutinizing the entry, by the detectives, of the Defendant's home.

The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In *Payton v. New York*, the United States Supreme Court reaffirmed the basic principle of Fourth Amendment jurisprudence that warrantless searches and seizures inside a home are presumptively unreasonable. 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Unequivocally stated: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that *threshold may not reasonably be crossed without a war-*

*rant." Id.* at 590, 100 S.Ct. at 1382 (emphasis added). Further, "*Payton* did not draw the line one or two feet into the home; it drew the line at the home's entrance." *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

■ The State has not attempted to satisfy its heavy burden of showing that exigent circumstances justified the warrantless arrest. *See Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (noting that the Court has actually applied only the "hot pursuit" exigent circumstance to arrest in the home). Nor has the State satisfied its burden of proving that Mr. Clark freely and voluntarily consented to the detectives' entry.[1] When Mr. Clark answered the door, the detectives merely identified themselves and entered the apartment. Contrary to the State's assertion, Mr. Clark's action in stepping back from the door was not an invitation for the officers to enter. Consent to enter and search a home will not be lightly inferred, nor found by mere acquiescence to unlawful authority. *See United States v. Shaibu,* 920 F.2d 1423, 1426 (9th Cir.1990) (citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968)).

There being no consent, and there being no exigent circumstances, the police had no basis to enter the home without a search warrant. Consequently, the detectives had no right to enter the apartment. Because they did, they violated Defendant's Fourth Amendment right to be secure in her home against unreasonable searches and seizures.

### II.

■ Having determined the entry violated the Fourth Amendment, we turn to an examination of the effect of this violation on the admissibility of evidence subsequently discovered in the apartment.

---

1. Because we find no effective consent, we do not reach the question whether the detectives could have reasonably believed that Mr. Clark had authority to consent to a search of his mother's home. *See Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).

The exclusionary rule may operate to bar the admissibility of evidence directly or derivatively obtained from an unconstitutional search or seizure. *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) (limited by *United States v. Havens*, 446 U.S. 620, 624, 100 S.Ct. 1912, 1915, 64 L.Ed.2d 559 (1980)). However, it has long been recognized that evidence obtained by means genuinely independent of the constitutional violation is not subject to the exclusionary rule. *See Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417; *Silverthorne*, 251 U.S. at 392, 40 S.Ct. at 183. This "independent source doctrine" rests upon the policy that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." *Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988).

Pursuant to this doctrine, an unconstitutional entry does not compel exclusion of evidence found within a home if that evidence is subsequently discovered after execution of a valid warrant obtained on the basis of facts known entirely independent and separate from those discovered as a result of the illegal entry. *See Segura v. United States*, 468 U.S. 796, 813–14, 104 S.Ct. 3380, 3390, 82 L.Ed.2d 599 (1984). Further, even "plain view" evidence observed during the warrantless entry will not be excluded so long as (1) the

evidence is later discovered during a search pursuant to a valid warrant, (2) this valid warrant was obtained without reference to evidence uncovered during the illegal search, and (3) the government agents would have obtained the warrant even had they not made the illegal entry. *See Murray*, 487 U.S. at 543, 108 S.Ct. at 2536.

In order for the subsequent warrant and search to be found genuinely independent of the prior unconstitutional entry, the second *Murray* requirement mandates that information obtained during the illegal entry may not have been presented to the issuing Magistrate. *See id.* at 542, 108 S.Ct. at 2536. Here, this factor is determinative.

Detective Hargrove, in his affidavit for a search warrant, stated he "knocked on the apartment door & the male white, Michael F. Clark, answered the door & when asked about the Lincolns admitted driving the Maroon one for the past several weeks." [2] It is inescapable that the search warrant was thus obtained partly on the basis of statements obtained during the detectives' unconstitutional entry.

That these statements, obtained as part and parcel of the illegal entry, may not be used to establish the genuine independence of the subsequent search warrant is clear from the United States Supreme Court's decision in *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). There, although declining to suppress statements made outside the home

---

**2.** Detective Hargrove's entire affidavit states:

On several occasions, of which all were reported to Police, cars were leased from Budget Rent–a–Car with stolen credit cards. These cases were assigned to the Auto Theft division for follow-up investigation. Your affiant (Don Hargrove, a veteran Police Officer of 16 yrs, specializing in this field) has been working on these cases & received an anonymous telephone call this date, August 13, 1987, that four (4) stolen cars could be located at the above described address. These cars were described by the caller as: One Lincoln Town car, color Maroon, one Lincoln Town car, color Tan, one Z–28, color Red and one Cadillac, color White. Your affiant has confirmed that three of the four cars are stolen. Your affiant, along with other detectives,

went to the above described location & did find three of the four vehicles described herein. On arrival, your affiant observed a Male white walk away from the maroon Lincoln & enter apartment N–269. Your affiant knocked on the apartment door & the male white, Michael F. Clark, answered the door & when asked about the Lincolns admitted driving the Maroon one for the past several weeks. When asked about the keys to the above described vehicles, he (Clark) said he didn't know where they were. Considering the totality of the circumstances described herein, your affiant would therefore pray that a search warrant be issued for the recovery of said stolen property, and that the same be brought before this court as provided by law.
/s/ Donald Hargrove

following a *Payton* violation, the Court stated: "The principal incentive to obey *Payton* still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found *or statements taken* inside the home." 495 U.S. at 20, 110 S.Ct. at 1644 (emphasis added).

Because the second *Murray* requirement is not met, the exclusionary rule precludes admission of evidence seized from Defendant's home subsequent to violation of her Fourth Amendment rights. Accordingly, the judgment of the Court of Criminal Appeals is affirmed and the case remanded to the trial court. Costs of this appeal are taxed to the State.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.