# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## JULY 1999 SESSION

FILED

September 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9806-CC-00268 |
| | ) | |
| vs. | ) | Lincoln County |
| | ) | |
| MILES MATEYKO, | ) | Honorable Charles Lee, Judge |
| | ) | |
| Appellant. | ) | (Child Neglect) |
| | ) | |

FOR THE APPELLANT:

**N. ANDY MYRICK, JR.**
Attorney At Law
116 West Market Street
Fayetteville, TN 37334

FOR THE APPELLEE:

**PAUL G. SUMMERS**
Attorney General & Reporter

**KIM R. HELPER**
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

**W. MICHAEL MCCOWN**
District Attorney General
17th Judicial District
P.O. Box 904
Fayetteville, TN 37334

**WEAKLEY E. BARNARD**
Assistant District Attorney General
Lincoln County Courthouse
Fayetteville, TN 37334

**OPINION FILED:** _____

**CONVICTIONS VACATED AND MODIFIED, REMANDED**

**JAMES CURWOOD WITT, JR., JUDGE**

The defendant, Miles Mateyko, appeals his Lincoln County Circuit Court jury convictions of child abuse and neglect. See Tenn. Code Ann. § 39-15-401 (a) (1997). A three-count indictment charged the defendant with the abuse and neglect of each his three children. Each child was under six years of age. The jury convicted the defendant in all three counts, and he was sentenced to serve six months in jail with the balance of the effective sentence of three years and four months to be served on probation. In this appeal, the defendant complains that evidence was obtained in violation of his constitutional right to be protected from unreasonable searches and seizures and that the evidence introduced at trial was insufficient to support the convictions. After review of the case, we reverse and vacate the convictions, impose convictions of attempted child neglect and remand the case to the trial court for sentencing.

The defendant, his wife and their three children, ages six months, two years, and four years, lived in a mobile home in the "Bates Trailer Park" in Lincoln County. On May 1, 1997, the defendant's wife complained of chest pains and called emergency medical personnel. The responding medical teams met Mrs. Mateyko in her front lawn, but after she decided not to go to the hospital, some of the team members escorted her back to the trailer. When she opened the front door to go in, the medical personnel detected a very pungent odor emanating from the interior. The odor suggested a mixture of urine, feces, and garbage that was bad enough to "take your breath away." Although the medical personnel remained outside the trailer, they looked through the open door into the living room and kitchen area and saw deplorable conditions of filth and squalor. Amidst garbage and trash in the floor, they saw an infant who, at first, did not appear to be moving; however, before leaving, one of the team members saw the infant move. There were two other young children who appeared to be "stacked" on a couch in the living room. The team members' testimony at trial concerning the filth, clutter and odor was graphic; however, the medical team felt they had no right to enter the private

2

dwelling, even though they believed that the health and welfare of the children was in danger. Instead, they returned to their base and notified the police of the situation.

Officers immediately went to the defendant's trailer and knocked on the door. When the defendant opened the door, an officer informed him that the officers had come to look into the welfare of the children. Although the officer was uncertain about whether the defendant said "okay" or "come in," he testified at a suppression hearing that the defendant gave his consent to the officers' entering the dwelling and then backed away to allow the officers to enter. At trial, the officers and the responding Department of Children's Services (DCS) worker testified about the disturbing, deplorable environment in the trailer. They found a puddle of vomit in the floor near the front door and within two feet of where the infant was laying. The child lay amidst dirty clothes, trash, remnants of fast food meals, and bugs that crawled about. The entire floor space was covered with dirty clothes and refuse. The adjoining kitchen was cluttered with open cans, rotting food, grease, and mounds of dishes and pans which contained mold-covered food. In other areas of the trailer, they found human feces in the floor. The smell of urine, feces, and garbage was overwhelming, so "intense it was unreal" and caused the nostrils to burn. The trailer was infested with "roach bugs," and the officers testified to having to exit the trailer periodically in order to breathe fresh air and to shake the roaches off their shoes and trousers. An officer found the two older children asleep in a back bedroom. They were nude, under a blanket, and when the officer found them, he discovered several roaches crawling upon the blanket.

Based upon the discovery of the conditions at the trailer, the DCS removed the children from the home. However, none of the investigating personnel, including the DCS worker who removed the children, noticed any signs that the children were injured or ill. A subsequent medical examination revealed that the children were healthy, except that the infant appeared to have a cold. In short,

except for the infant's cold, there was no proof that the children suffered from being sick, injured or emotionally distraught.

The trial court instructed the jury that it should consider the charged offense and that, should the jury acquit the defendant of the charged offense, it should then consider as a lesser included offense the charge of attempted child abuse and neglect. The jury convicted the defendant on all three counts of the charged offense of child abuse and neglect.

In his first issue, the defendant asserts that the police officers' warrantless entry into his home was unreasonable and, therefore, unlawful. See U.S. Const., amend. IV; Tenn. Const., art. I, § 7; State v. Clark, 844 S.W.2d 597, 599 (Tenn. 1992). The trial court conducted a pretrial suppression hearing and concluded that the warrantless entry was supported by alternative theories which are based upon recognized exceptions to the warrant requirement -- that the entry was reasonable because of the presence of exigent circumstances and that the entry was accommodated by the defendant's consent. The trial court denied the motion to suppress. As a result, at trial the court admitted the officers' testimony, as well as photographs the officers took while they were on the scene.

The trial court's findings at a suppression hearing are entitled to the weight of a jury verdict, and we will not disturb the trial court's ruling unless the evidence preponderates against it. State v. Odom, 928, S.W.2d 18, 23 (Tenn. 1996).

Generally, the state and federal constitutions require that police officers obtain a warrant before they enter a citizen's home. Clark, 844 S.W.2d at 599. However, the courts recognize exceptions to the warrant requirement. See State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996). For instance, the existence of exigent circumstances may justify a warrantless entry, Rippy v. State,

4

550 S.W.2d 636, 641 (Tenn. 1977), and the citizen's consent to the entry may excuse the absence of a warrant. Bartram, 925 S.W.2d at 230.

We hold that the record supports the trial court's finding that the defendant consented to the officers' entry into the trailer. The trial court accredited the officer's testimony that the defendant assented to the entry by a combination of words and actions. The trailer door opened outwardly. The defendant's words of assent and his backing away from the open door and sitting on the couch, while the officers stood at the threshold and the infant was on the floor in plain view, support a conclusion that consent was given. We conclude that the present case is distinguishable from Clark, in which our supreme court said that Clark "stepped back *as he opened the door*" and the detectives "merely identified themselves and entered the apartment." Clark, 844 S.W.2d at 598, 599 (emphasis added). Based upon the defendant's consent, the entry into the trailer was reasonable, and the resulting discoveries were admissible.

In his second issue, the defendant asserts that the evidence is insufficient to support this convictions.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W. 2d 474, 476 (Tenn. 1973); Anglin v. State, 553 S.W.2d 616, 620 (Tenn. Crim. App.

5

1977), which the defendant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2782 (1979); Tenn R. App. P. 13. See also, State v. Williams, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. State v. Thomas, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

The applicable statute in this case is Tennessee Code Annotated section 39-15-401(a), which provides in pertinent part:

> Any person who knowingly other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits a Class A misdemeanor; provided, that if the abused child is six (6) years of age or less, the penalty is a Class D felony.

Tenn. Code Ann. § 39-15-401(a) (1997).

As a preliminary matter, we must first determine which *mens rea* element applies where the means of committing the crime is alleged to be child neglect. See Tenn. Code Ann. § 39-11-301, -302 (1997). Upon review of Code section 39-15-401(a), it is not immediately apparent whether the "knowingly" *mens rea* applies only to the child abuse clause and not the child neglect clause, or alternatively, to both the child abuse and child neglect clauses. In previous decisions, this court has applied the knowing *mens rea* to the offense of child neglect. State v. John Adams and Rita Adams, No. 02C01-9707-CR-00246, slip op. at 7-8 (Tenn. Crim. App., Jackson, Jul. 14, 1998), perm. app. granted (Tenn., Feb. 8, 1999); State v. Roberson, 988 S.W.2d 690, 694 (Tenn. Crim. App. 1998)

6

(aggravated child abuse and neglect), perm. app. denied (Tenn. 1999). Furthermore, section 39-15-401(a) treats child neglect on a parity with knowing child abuse that results in injury, and we believe it is unlikely that the legislature would equate knowing child abuse to mere neglect that is less than knowing. Accordingly, we conclude that section 39-15-401(a) proscribes the *knowing* neglect of a child which adversely affects the child's health and welfare.

A second preliminary issue we must resolve is whether the requirement that the neglect "adversely affect the child's health and welfare" mandates discernible detriment. See Tenn. Code Ann. § 39-15-401(a) (1997). The defendant argues that the statute requires proof that the child victim suffered some objective harm. The state, on the other hand, contends that objective harm is not required.

In support of his argument, the defendant relies upon State v. Kevin R. Mosley, No. 01C01-9108-CC-00235 (Tenn. Crim. App., Nashville, Apr. 29, 1992). In Kevin R. Mosley, the defendant burglarized a home while a female resident and her five-week-old infant were present. Kevin R. Mosley, slip op. at 4. He bound the mother, and the child "was left in her crib unattended and undisturbed" while the defendant and his accomplice gathered the items they wanted to take. Id. Mosley asked for a telephone number which he could use to call the victim's neighbor to report that she needed help. Id. at 4-5. The woman furnished the number, and the defendant left. Id. at 5. A short while later he called the number to report the mother's status. Id. The defendant was convicted of an number of offenses, including child abuse and neglect. Id. at 2. This court reversed this latter conviction because, *inter alia*, it found that the record contained no evidence that "any harm was inflicted upon the child . . . [or] that the defendant's conduct adversely affected the welfare of the child." Id. at 9.

On the other hand, the state relies upon State v. Jeffrey Lloyd

7

<u>Winders</u>, No. 88-1142-III (Tenn. Crim. App., Nashville, Sept. 14, 1989) (Reid, J., dissenting). At 5:20 am, Winders and his female companion left her two young children outside a closed gas station while the adults left to engage in sexual relations. <u>Jeffrey Lloyd Winders</u>, slip op. at 2. Approximately 20 minutes later, the children were found in a distressed and upset condition by the station attendant. <u>Id</u>. Winders was convicted of child neglect, and on appeal, he argued that "some adverse effect must have resulted from the neglect." <u>Id</u>. at 4. In a split opinion, the majority of the panel of this court affirmed the conviction and said, "The term 'so as to adversely affect its health and welfare' does not require that some 'injury' be inflicted on the child." <u>Id</u>. at 5.

In determining which interpretation of the child neglect statute represents the better-reasoned approach, we are guided by the general statutory scheme as it applies to offenses relative to child safety. The crime of which the defendant was convicted, child neglect, is a Class A misdemeanor unless the victim is six years of age or less, in which case the crime is a Class D felony. <u>See</u> Tenn. Code Ann. § 39-15-401(a) (1997). Contributing to the neglect of a child is a Class A misdemeanor, and this crime contains no requirement of detriment to the child. <u>See</u> Tenn. Code Ann. § 37-1-157 (1996). Likewise, reckless endangerment, which is either a Class A misdemeanor or a Class E felony, depending on whether a deadly weapon is employed, does not require that the victim[1] suffer detriment. <u>See</u> Tenn. Code Ann. § 39-13-103 (1997). In addition, the attempt statute provides the possibility of prosecuting any inchoate crime which requires a knowing or intentional *mens rea* as the next-lesser class offense as the principal crime. <u>See</u> Tenn. Code Ann. §§ 39-12-101, -107(a)(1997) (attempt and classification); <u>State v. Dale Nolan</u>, No. 01C01-9511-CC-00387, slip op. at 18-19, n. 9 (Tenn. Crim. App., Nashville, Jan. 26, 1997) (inchoate crimes requiring knowing mental state are subject to prosecution for attempt), <u>perm</u>. <u>app</u>. <u>denied</u> (Tenn. 1998).

_____

[1]  The reckless endangerment statute does not limit the class of victims to children only.

8

Additionally, we find guidance in the definitions of the words used in the statute itself. "Affect" means "[to] act upon or have an effect upon." Funk & Wagnall's Standard College Dictionary 24 (Text ed. 1963). "Adverse" means "antagonistic" and "detrimental." Id. at 21. "Health" refers to the "[g]eneral condition of body or mind." Id. at 617.

Upon consideration, we are persuaded that the better-reasoned interpretation is that advanced by Kevin R. Mosley. Thus, "to adversely affect the health and welfare" as contemplated by the child neglect statute means that the offending action must have an actual, deleterious effect. This interpretation is harmonious with the statutory scheme; child abuse and neglect, at least as to victims who are six or fewer years of age, is classified as a more serious offense than the offenses of contributing to the neglect of a child or reckless endangerment. It is logical to classify as more serious a crime involving actual harm. Moreover, neglect which has occurred knowingly but without an adverse affect to the child's health and welfare is punishable as an attempt. Furthermore, this interpretation is harmonious with the plain meaning of the words chosen by the legislature to define the proscribed conduct in section 39-15-401.

With the elements of the crime at hand, we proceed with analysis of the sufficiency of the evidence. As noted above, elements of criminal offenses may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). When circumstantial evidence excludes all other hypotheses except that a child was harmed as a result of knowing neglect, a conviction of child neglect is supportable.

In the present case, the evidence in the light most favorable to the state demonstrates that the Mateyko children were discovered in an environment where the air was so malodorous and pungent that the investigator's nostrils

9

burned, food prepared there would be unfit for human consumption, and nude children slept under a blanket teeming with roaches. Nonetheless, medical examinations of the Mateyko children were unremarkable other than that the youngest child had a cold. It is certainly possible that adverse effects to the children's health and welfare could result from these offensive and extreme conditions. However, that is not the only conclusion which could be drawn from this evidence, particularly where the record is devoid of any proof of a medical or scientific nature that these conditions in and of themselves equated to harm. Had medical or scientific proof been offered to show the harm *per se* from the living conditions, the conviction for child neglect might well be supported despite the lack of evidence of injury or illness.[2] In the absence of such proof of record, there is no basis for a jury concluding that the Mateyko children's health and welfare was adversely affected, as that phrase is contemplated by the child neglect statute. For this reason, the convictions of child neglect must be vacated.

However, the record provides a sound basis for determining that the defendant is guilty of the lesser offense of attempted child neglect. Thereby, acting knowingly and with the "intent to complete a course of action . . . that would constitute the offense [of child neglect], under the circumstances surrounding the conduct as the [defendant] believe[d] them to be," the defendant engaged in conduct that "constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3) (1997) (proscribing and defining criminal attempt). The record reflects that the trial court instructed the jury as to the lesser offense of an attempted child neglect. See Tenn. Code Ann. § 39-12-107(a) (1997) ("Criminal attempt is an offense one (1) classification lower than the most serious

---

[2]

We do not believe that the requirement of detriment equates to a requirement in all cases that, to establish a violation, the detriment must be discernible to the eye or that the result of the neglect must be apparent. Harm may be transitory, and at the time of examination, a child victim may manifest no lasting effects from an earlier infliction of harm. In the appropriate case, circumstantial and/or expert evidence might establish some past harm suffered by the child prior to discovery of the neglect.

10

crime attempted . . . . "). Under the circumstances of this case, we conclude that the jury's verdict is necessarily a finding on each count that the defendant committed acts which constitute an attempt to commit child neglect.

We therefore impose in each of three counts a conviction of the Class E felony offense of attempted neglect of a child who is six years of age or less. We remand the case to the trial court for sentencing the defendant.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
JOHN EVERETT WILLIAMS, JUDGE